UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

EDWARD EVANS,

               Plaintiff,

     v.

USF REDDAWAY, INC., an Oregon
Corporation,

             Defendant.

Case No. 1:15-CV-00499-EJL-REB

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Before the Court in the above entitled matter are the Defendant's Motion for Summary Judgment and related Motion to Strike evidence which have been fully briefed and are ripe for the Court's consideration. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions are decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Edward Evans brings this employment action against his former employer, USF Reddaway, Inc. (Reddaway), alleging claims arising from his termination. In 1996, Mr. Evans was hired by Reddaway, a commercial transportation company delivering

freight and cargo, as a dock worker. Mr. Evans soon became a delivery driver at Reddaway's Boise terminal where he worked for the remainder of his employment until March of 2014 when he was terminated. When Mr. Evans started as a delivery driver, Reddaway's Boise terminal was not unionized. Mr. Evans was instrumental in organizing and unionizing Reddaway employees with the Teamsters in 2006 and 2007 and remained active in the union during his employment. As a union member, Mr. Evans' employment was pursuant to a Collective Bargaining Agreement.

In June of 2013, Mr. Evans became a line driver for Reddaway. In that position, Mr. Evans drove a standard route from Reddaway's Boise terminal to Burley, Idaho where he would connect with another driver and then return to the Boise terminal. Sometimes Reddaway would alter the route to go through Twin Falls, Idaho or Snowville, Utah. The scheduled start time for Mr. Evans' route was 11:00 p.m., meaning he arrived at his turnaround point in the middle of the night. Mr. Evans raised concerns about the conditions and general safety for drivers at the Twin Falls terminal with a Reddaway manager, the union steward, and the Occupational Safety and Health Administration (OSHA). Eventually, in September of 2013, Mr. Evans filed a union grievance relating to the conditions at the Twin Falls terminal noting the dirt, dust, gravel, poor lighting, and lack of fencing/security were unsafe for drivers. (Dkt. 1, Ex. A.) He filed a second grievance regarding the security of the exterior gate at the Boise terminal. (Dkt. 1, Ex. B.)

In November of 2013, Reddaway management met with union representatives and Mr. Evans regarding the grievances. Ultimately, Reddaway agreed to fix the locks at the Boise terminal and Mr. Evans withdrew the grievances. On February 27, 2014, Reddaway

notified Mr. Evans that he was "relieved from duty pending an investigation for theft of company time and falsifying documents." (Dkt. 1, Ex. C.) Reddaway terminated Mr. Evans employment on March 6, 2014 citing "theft of company paid time" relating to his having left on his route before his start time, charging Reddaway for his "wait time" at the turnaround locations, and charging for his thirty-minute safety break required by the Department of Transportation (DOT). (Dkt. 1, Ex. D.)

As a result, Mr. Evans filed a complaint with the Secretary of Labor and has now filed this action raising a federal claim for retaliation in violation of the Surface Transportation Assistance Act (STAA), 49 U.S.C. § 31105, and a state law claim for wrongful discharge in violation of Idaho public policy. (Dkt. 1.) Mr. Evans challenges the reasons given for his termination alleging Reddaway dispatchers would often send drivers on their route earlier than their start times if the freight was loaded on the truck and the paperwork had been completed. This resulted in "wait time" at the turn around point for drivers while they waited for their connections to arrive from other terminals. Mr. Evans alleges he received no training, instruction, or any indication that his billing practices were inappropriate and that other drivers were not disciplined or terminated for the same conduct. Instead, Mr. Evans argues, his termination was in retaliation for his having filed the grievances regarding the safety concerns at the Boise and Twin Falls terminals.

Reddaway's Motion for Summary Judgment argues both of Mr. Evans' claims should be dismissed as a matter of law. (Dkt. 22.) Reddaway also filed a related Motion to Strike. (Dkt. 32.) The Court finds as follows.

# STANDARD OF LAW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "material" if it affects the outcome of the litigation and may be considered "genuine" if it is established by "sufficient evidence supporting the claimed factual dispute…to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)); s*ee also British Motor Car Distrib. v. San Francisco Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989). In order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted). When applying this standard, the court views all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## ANALYSIS

### 1.    Motion to Strike

Reddaway moves to strike paragraphs 14 through 19 of Mr. Evans' Declaration and the attached Exhibits B through F filed in opposition to the Motion for Summary Judgment. (Dkt. 32.) Reddaway argues the Declaration and Exhibits have not been shown to be admissible as they contain inconsistent and/or hearsay testimony, are not based on Mr. Evans' personal knowledge, and lack foundation. (Dkt. 32, 34.) Mr. Evans opposes the Motion to Strike arguing the materials are properly before the Court. (Dkt. 33.)

Federal Rule of Civil Procedure 56 requires summary judgment motions to be supported by cites to the record and affidavits. The rule, however, allows for flexibility. *Savage v. Dennis Dillon Auto Park & Truck Center, Inc.*, 2015 WL 6134354, at *2 (D. Idaho Oct. 19, 2015). The Court is not limited to consideration of only the cited materials, but also may consider "other materials in the record," including declarations to set out facts that "would be admissible in evidence." *Id.* (quoting Fed. R. Civ. P. 56(c)(3), (c)(4)). Hearsay statements can be cured at trial with the testimony of the declarant. *Id.* If a party fails to properly support an assertion of fact, the Court has discretion to give the party an opportunity to properly support or address the fact. Fed. R. Civ. P. 56(e).

Further, evidence need not be admissible to be considered on summary judgment; rather, the evidence need only be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). In determining admissibility for summary judgment purposes, it is the content

of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is currently presented in an inadmissible form. *Id.* (affirming consideration of hearsay contents of the plaintiff's diary on summary judgment because at trial, the plaintiff's testimony of contents would not be hearsay). Moreover, the rule encourages decisions on the merits, not on technicalities. This policy is "expressed in the local rules, the case law of the United States Court of Appeals for the Ninth Circuit, and the Federal Rules of Civil Procedure." *Savage*, 2015 WL 6134354, at *2 (citation omitted).

The particular portions of the Declaration and Exhibits that are the subject of the Motion to Strike concern Mr. Evans' allegations about comparators; i.e., other employees who engaged in similar behaviors to that of the Plaintiff but who were not disciplined or terminated. (Dkt. 30-12, Dec. Evans.) Specifically, other line drivers who left before their bid times and/or charged wait time upon arrival at their meet points but were not disciplined or terminated.

The Court denies the Defendant's Motion to Strike in this case. The Declaration and attached Exhibits are materials that could be presented in an admissible form at trial and the Court will consider them in deciding the Motion for Summary Judgment. The Court makes no ruling at this time as to whether the evidence and/or testimony would be admissible at trial.

**2.     Motion for Summary Judgment**

**A.     The STAA Claim**

The First Claim for Relief is for retaliation in violation of the STAA. (Dkt. 1.) Mr. Evans alleges he was terminated because he filed complaints or had begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order and, alternatively, because Reddaway perceived that he had or was about to do so. (Dkt. 1.)

**i.     The Legal Burdens for an STAA Claim**

The parties disagree over their respective legal burdens on the STAA retaliation claim. Defendant argues the traditional *McDonnell Douglas* burden-shifting standard is applicable demanding the Plaintiff show he was engaged in a protected activity, he suffered an adverse employment action, and a causal link between the two before the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action and, if that is shown, Plaintiff must then demonstrate pretext. (Dkt. 23 at 3) (Dkt. 31 at 4.) Plaintiff contends a more employee-friendly framework applies requiring only that he show his engagement in a protected activity was a contributing factor to his termination before the burden shifts to Reddaway to show, by clear and convincing evidence, that it would have taken the same action absent any protected activity. (Dkt. 30 at 10-11.)

The STAA was amended in 2007 to incorporate the legal burdens of proof set forth in the whistleblower provision of the Wendall H. Ford Aviation Investment and Reform Act for the 21st Century (AIR-21), 49 U.S.C. § 42121(b)(2)(B). *See* 49 U.S.C. § 31105(b). The STAA amendment states: "[a]ll complaints initiated under this section shall be

governed by the legal burdens of proof set forth in section 42121(b)." 49 U.S.C. § 31105(b)(1). Mr. Evans argues that amendment incorporates the filing provisions of the AIR-21 for his STAA retaliation claim. (Dkt. 30 at 10-11.) Defendant disagrees contending the language in § 31105(b)(1), and therefore the "contributing factor" standard, only applies to complaints filed before the Secretary of Labor; not to an STAA claim made in federal court. (Dkt. 31 at 4.) The Court disagrees with Defendant's interpretation.

The STAA's amendment incorporating AIR-21's burden shifting standard did not limit it to just complaints made to the Secretary of Labor. The Ninth Circuit has recognized and applied AIR-21's burden shifting analysis in a Sarbanes-Oxley Act retaliatory discharge case which, like the STAA, similarly incorporates the burden of proof set forth in AIR-21. *See Van Asdale v. International Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009); *see also Thomas v. Union Pacific Railroad Co.*, 203 F.Supp.3d 1111, 1114-15 (D.Or. 2016) (applying AIR-21's burden shifting framework to a retaliation claim under the Federal Rail Safety Act, 49 U.S.C. § 20109(d)(2)). Moreover, other circuits have applied AIR-21's framework to STAA retaliation claims. *See Maverick Transp., LLC v. United States Dept. of Labor, Admin. Review Bd.*, 739 F.3d 1149, 1155 (8th Cir. 2014); *Formella v. United States Dept. of Labor*, 628 F.3d 381, 389 (7th Cir. 2010). This Court finds AIR-21's framework applies to Mr. Evans' STAA claim in this case.

Mr. Evans must therefore first make out a prima facie case of retaliatory discrimination which requires him to prove the following elements by a preponderance of the evidence: (1) he engaged in statutorily-protected activity; (2) the employer knew he engaged in a protected activity; (3) he suffered an unfavorable personnel action; and (4)

his protected activity was a contributing factor in the unfavorable personnel action. *Thomas*, 203 F.Supp.3d at 1115 (citing *Van Asdale*, 577 F.3d at 996 ("Section 42121(b)(2)(B), in turn, sets forth a burden-shifting procedure by which a plaintiff is first required to make out a prima facie case of retaliatory discrimination"); *Araujo v. N.J. Transit Rail Ops., Inc.*, 708 F.3d 152, 157 (3d Cir. 2013); and *Tamosaitis v. URS Inc.*, 781 F.3d 468, 481 (9th Cir. 2015) (same elements required for a prima facie case of retaliation under the Energy Reorganization Act)). In doing so, Mr. Evans need only show, as part of his prima facie case, that his protected activity was a "contributing factor" in the retaliatory discharge, not the sole or even predominant cause. *Thomas*, 203 F.Supp.3d at 1115 (quoting *Araujo*, *supra* and 49 U.S.C. § 42121(b)(2)(B)(ii)). "In other words, a contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Id.*

If Mr. Evans establishes the prima facie case, the burden then shifts to Reddaway to rebut Mr. Evans' evidence by demonstrating "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior." 49 U.S.C. § 42121(b)(2)(B)(ii); *Van Asdale*, 577 F.3d at 996.

The STAA, as amended, is more favorable to the complaining employee. *Formella*, 628 F.3d at 389 (citation omitted). The "'causation' element of Plaintiff's prima facie case is less onerous under [this framework] and the burden on Defendant to show it would have taken the same action anyway is by clear and convincing evidence, a higher burden of proof than required under other retaliation statutes." *Thomas*, 203 F.Supp.3d at 1116 ("The clear

and convincing standard is a higher burden of proof than used in many other employment discrimination and retaliation statutes.").

Applying that standard here, Reddaway argues the STAA claim fails as a matter of law because it does not pertain to any protected activity, causation has not been shown, and Reddaway has established a legitimate, non-retaliatory reason for Mr. Evans' termination regardless of any protected activity. (Dkt. 22, 31.) The Court finds Mr. Evans has failed to establish his prima facie case because he has not shown that he engaged in a statutorily-protected activity.

### ii. Protected Activity

Reddaway contends Mr. Evans' has not shown that he engaged in a protected activity because the STAA claim does not assert any violation, or alleged violation, of the Federal Motor Carrier Safety Regulations (FMCSR) and the complaints do not relate to commercial motor vehicle safety. (Dkt. 23, 31.)

The STAA's purposes are to "promote the safe operation of commercial motor vehicles," "to minimize dangers to the health of operators of commercial motor vehicles," and "to ensure increased compliance with traffic laws and with...commercial motor vehicle safety and health regulations and standards." 49 U.S.C. § 31131(a). To achieve those purposes, the STAA "encourage[s] employee reporting of noncompliance with safety regulations governing commercial motor vehicles." *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258 (1987). "Congress recognized that employees in the transportation industry are often best able to detect safety violations and yet, because they may be threatened with discharge for cooperating with enforcement agencies, they need express protection against

retaliation for reporting these violations." *Id.* The anti-retaliation provisions of the STAA protects employees who 1) file a complaint or testify concerning violations of a commercial motor vehicle safety or security regulation, standard, or order and/or 2) who refuse to operate a vehicle in violation of the same. 49 U.S.C. § 31105.[1]

---

[1] The STAA anti-retaliation provision provides:

**(a) Prohibitions.--(1)** A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because--

    **(A)(i)** the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order, or has testified or will testify in such a proceeding; or

        **(ii)** the person perceives that the employee has filed or is about to file a complaint or has begun or is about to begin a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order;

    **(B)** the employee refuses to operate a vehicle because--

        **(i)** the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security; or

        **(ii)** the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition;

…

    **(2)** Under paragraph (1)(B)(ii) of this subsection, an employee's apprehension of serious injury is reasonable only if a reasonable individual in the circumstances then confronting the employee would conclude that the hazardous safety or security condition establishes a real danger of accident, injury, or serious impairment to health. To qualify for protection, the employee must have sought from the employer, and been unable to obtain, correction of the hazardous safety or security condition.

**(b) Filing complaints and procedures.--(1)** An employee alleging discharge, discipline, or discrimination in violation of subsection (a) of this section, or another person at the employee's request, may file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred. All complaints initiated under this section shall be governed by the legal burdens of proof set forth in section 42121(b). On receiving the complaint, the Secretary of Labor shall notify, in writing, the person alleged to have committed the violation of the filing of the complaint.

Mr. Evans' claim in this case falls under the "complaint" clause of the anti-retaliation provisions under which an employee engages in protected activity if he or she files a complaint related to a safety violation:

> A person may not discharge an employee ... because the employee ... has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order, or has testified or will testify in such a proceeding.

49 U.S.C. § 31105(a)(1)(A)(i).

Reddaway asserts Mr. Evans' did not engage in a protected activity because his complaints about the conditions in the terminal yards – dirt, dust, gravel, poor lighting, and lack of security - do not relate to an actual violation of any FMCSR. (Dkt. 23 at 4-6.) Mr. Evans disagrees arguing his complaints do not need to prove an actual violation of the FMCSRs in order to constitute a protected activity. Instead, he contends, a complaint need only implicate a commercial motor vehicle safety regulation, standard, or order and be based on an objectively reasonable belief or perception regarding the existence of a motor vehicle safety violation. (Dkt. 30 at 11-16.)

The Court finds a protected activity under the STAA's complaint clause involves a complaint that is reasonably related to or reasonably believed to be a commercial motor vehicle safety violation. *See Yellow Freight System, Inc. v. Martin*, 954 F.2d 353, 357-58 (6th Cir. 1992) (affirming the Secretary of Labor's interpretation that a proceeding need only be "related to" a safety violation to be a protected activity under the STAA). In *Koch*

---

49 U.S.C. § 31105.

*Foods, Inc. v. Sec. of United States Dept. of Labor*, the Eleventh Circuit distinguished between the refusal to drive clause of the STAA, § 31105(a)(1)(B), where an actual violation is required in order for a refusal to be a protected activity, and the complaint clause, § 31105(a)(1)(A), where an actual violation may not always be required in order for a complaint to be a protected activity. 712 F.3d 476,482-83 (11th Cir. 2013). There, the court concluded that a complaint is a protected activity where it is "related to a violation" such that an act is "reasonably perceived to be a violation." *Id.* The Fourth and Seventh Circuits have applied similar language to determining whether a complaint is a protected activity, requiring a "reasonable belief" of a motor vehicle safety regulation violation. *Calhoun v. United States Dept. of Labor*, 576 F.3d 201, 212 (4th Cir. 2009) (holding "[t]o qualify for protection, a complaint must be based on a 'reasonable belief that the company was engaged in a violation of a motor vehicle safety regulation.'"); *Gaines v. K-Five Const. Corp.*, 742 F.3d 256, 267-69 (7th Cir. 2014) (considering whether the employee had a "good faith and reasonable belief" for complaining of a safety regulation, standard, or order violation). The employee need not actually be successful in proving a violation; i.e., the outcome of the complaint does not determine whether it is a protected activity. *See Yellow Freight System*, 954 F.3d at 356. Instead, the complaint must relate to actions reasonably perceived to be commercial motor vehicle safety violations.

In this case, Mr. Evans argues his complaints were a protected activity because he had an objective reasonable belief that the facts and merits of his complaints implicated a governing commercial motor vehicle safety or security regulation, standard, or order. (Dkt.

30 at 12) (citing *Gaines*, 742 F.3d at 267.)[2] Specifically, Mr. Evans points to FMCSR regulations 49 C.F.R. §§ 392.3, 392.7, 392.9, and 392.14. Reddaway does not dispute, at least for purposes of this Motion, that Mr. Evans' complaints are factually accurate but instead argues that even if Mr. Evans' complaints are factually true, they still do not raise any violations of the FMCSRs because the complaints do not concern commercial motor vehicles or public highways. (Dkt. 31 at 2-3.) Reddaway relies on *Calhoun* in arguing that Mr. Evans' complaints fail to state actual violations of the FMCSRs and, therefore, are not protected activities. (Dkt. 23 at 4-6.)

In *Calhoun*, the court concluded the employee's reliance on general FMCSR regulations in his complaints, 49 C.F.R. §§ 392.7, 396.13, were not protected activities because the complaints did not involve a concern about a violation of a specific regulation or conduct that was reasonably necessary to satisfy the employee that the vehicle was safe to operate; i.e. the general regulations, without some specific safety concern, did not demonstrate a reasonable belief that the company was engaged in a violation of a motor vehicle safety regulation. *Calhoun*, 576 F.3d at 213. The *Calhoun* court did, however, also concluded that one of the employee's complaints raising a specific concern (a broken dolly

---

[2] In *Gaines* the court held "that an employee who files a reasonable safety complaint in good faith is protected by 49 U.S.C. § 31105(a)(1)(A)(i) even when that complaint contains inaccurate information." *Gaines*, 742 F.3d at 267. *Gaines* is factually distinct from this case. The holding in *Gaines* differentiated between cases where, as in this case, the complaints are factually true but may be legally insufficient to show a violation of the FMCSRs versus cases where the complaints are legally sufficient but factually untrue or inaccurate. *Id.* There is no dispute on this Motion as to the factual accuracy of Mr. Evans' complaints. (Dkt. 31 at 2-3.)

brake) was a protected activity. Thus, under *Calhoun*, specific employee concerns regarding safety violations may constitute a protected activity.

In this case, Mr. Evans' complaints raised specific concerns about the conditions at the terminals which, he alleges, relate to the safety and operation of commercial vehicles as well as the drivers' ability to complete the FMCSR required safety inspections. (Dkt. 30.) The shortcomings of the complaints, however, are that they do not relate to a violation or possible violation of any commercial motor vehicle safety regulation nor do they show that Mr. Evans' had a reasonable belief that there was such a violation. The concerns raised in the complaints are not regulated by the FMCSR. Further, the complaints themselves do not identify or refer in any way to any FMCSR alleged to have been violated or applicable to the concerns raised. (Dkt. 1, Exs. A, B.)[3]

Section 392.14 demands that drivers operating a commercial motor vehicle in hazardous conditions exercise extreme caution when operating a commercial motor vehicle in such conditions. 49 C.F.R. § 392.14.[4] Under this regulation, if the conditions at the

---

[3] The Court does not conclude that a complaint must specifically cite to a commercial motor vehicle safety regulation or standard in order to be a protected activity under the STAA. The Court notes the complaints' lack of any reference to any such regulation or standard in this case because it is indicative of the absence of a reasonable belief that the conduct complained of violated any such regulation or rule.

[4] "Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist. If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated. Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured." 49 C.F.R. § 392.14.

terminals complained of by Mr. Evans rose to the level of a "hazardous condition," then Mr. Evans was required to exercise extreme caution. (Dkt. 30 at 12-13.) Section 392.14 does not regulate the existence or occurrence of the hazardous conditions nor Reddaway's ability to eliminate or improve the conditions. Instead, the regulation requires the driver of a commercial motor vehicle who encounters hazardous conditions to use extreme caution when operating a commercial motor vehicle in such conditions. Mr. Evans' complaints in this case do not relate to this regulation or show that he had any reasonable belief that this safety regulation was being violated. (Dkt. 1 at Exs. A, B.)

Mr. Evans' complaints are in regards to the conditions that existed at the terminals – i.e., dirt, dust, gravel, poor lighting, and lack of security. (Dkt. 1 at Exs. A, B.) The complaints do not evidence that the conditions were hazardous so as to necessitate extreme caution in the operation of a commercial vehicle. They are instead complaints about the working conditions at the terminals. Such complaints do not relate to the requirements imposed by § 392.14 nor demonstrate any reasonable belief that a commercial motor vehicle safety standard or regulation was being violated.

Mr. Evans points to *Phillips v. Conway Freight* where the Administrative Law Judge (ALJ) concluded that the vehicle operator's complaint about adverse lighting and snow conditions in the company parking lot was a protected activity because it implicated § 392.14. (Dkt. 30 at 13) (citing *Phillips v. Conway Freight*, Case No. 2012-STAA-00001 (ALJ April 23, 2012)). The ALJ in *Phillips* went on to state that "those conditions may interfere with the safe operation of a vehicle." *Phillips*, *supra*. Having reviewed that decision, this Court finds those conclusory statements in *Phillips* are unbinding and the

case is factually distinct from the circumstances presented here. For the reasons stated herein, the Court finds the complaints made in this case do not show a reasonable belief that the conditions complained of at the terminal related to or violated § 392.14.

The same is true as to the other FMCSR regulations relied upon by Mr. Evans. Regulation § 392.7 concerns vehicle equipment, inspection, and use, requiring that the driver be satisfied that enumerated parts, accessories, and components are in good working order before operating a commercial motor vehicle or transporting equipment. Similarly, § 392.9 requires inspection of cargo and cargo securement devices and systems before a driver may operate a motor vehicle. Mr. Evans argues the poor conditions at the Reddaway terminals impacted these safety checks and inspections required by the FMCSRs. (Dkt. 30 at 13.) Even if the conditions at the terminals made these safety checks difficult, Mr. Evans' complaints do not demonstrate a reasonable belief that the company was engaged in a violation of these regulations. The conditions complained of do not implicate or reasonably relate to the regulations requiring inspections of the vehicle and/or cargo. Moreover, when reading the complaints themselves, it is clear they do not relate to or implicate these inspection regulations nor evidence a reasonable belief that Reddaway was violating any motor vehicle safety regulation or standard. (Dkt. 1 at Exs. A, B) (complaining about "unsafe working conditions" and health and safety of drivers unrelated to motor vehicle safety standards).

Mr. Evans also points to Regulation § 392.3, arguing this regulation is implicated in his complaints about the Reddaway terminals as the drivers' ability or alertness may be impaired by other causes such as "the poor lighting, dust, rutted surfaces, or individuals

lurking in an unsecured lot." (Dkt. 30 at 13.)[5] Section 392.3 relates to ill or fatigued operators. It does not apply to Mr. Evans' complaints about the terminals' conditions in this case. Even when read broadly, the concerns raised in the complaints are about unsafe working conditions unrelated to any violation of a commercial motor vehicle safety standard. (Dkt. 1 at Exs. A, B.) The complaints, therefore, do not show a reasonable belief that Reddaway was engaged in a violation of a FMCSR.[6]

In sum, the FMCSR regulates commercial motor vehicle safety. The complaints about the conditions at the terminals are not related to commercial motor vehicle safety and, therefore, are not regulated by the FMCSR. While the Court appreciates that the conditions at the terminals may impact the ability of the drivers' to carry out their vehicle inspections and/or other safety obligations with regard to operating their commercial motor vehicles, the conditions at the terminals are not regulated by nor relate to any FMCSR or

---

[5] "No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency where the hazard to occupants of the commercial motor vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed." 49 C.F.R. 392.3.

[6] Mr. Evans cites to *Gay v. Burlington Motor Carriers*, No. 92-STA-5, 1993 WL 832057, (Sec. of Labor May 20, 1993) wherein the Secretary of Labor concluded a tractor mechanic's complaints regarding workplace conditions adversely affecting his health could interfere with the inspection, repair, and maintenance of commercial motor vehicles and, therefore were protected activities because they "related to" commercial motor vehicle violations. Under those circumstances, § 392.3 was implicated. The same is not true of the conditions complained of at the Reddaway terminals in this case. Mr. Evans' complaints in this case do not allege the impact of the conditions complained of on the drivers' health and safety implicated any violation of the FMCSR; i.e., the complaints do not evidence a reasonable belief that Reddaway was in violation of a commercial motor vehicle safety standard. (Dkt. 1 at Exs. A, B.)

other commercial motor vehicle safety regulation or standard. It may be poor judgment for Reddaway to not correct the poor conditions at its terminals, but that does not give rise to a commercial motor vehicle safety regulation. Moreover, the complaints themselves do not evidence a reasonable belief that Reddaway was engaged in a violation of a commercial motor vehicle safety standard. (Dkt. 1, Exs. A, B.) For these reasons, the Court finds the complaints are not protected activities and Mr. Evans' STAA claim fails as a matter of law. Defendant's Motion for Summary Judgement on the STAA claim. The Court, therefore, need not decide the arguments concerning the remaining elements of the STAA claim.

**B.     The State Law Wrongful Discharge Claim**

The Second Claim for Relief is for wrongful discharge in violation of Idaho Public Policy. (Dkt. 1.) Mr. Evans alleges he was terminated for engaging in a protected activity including: union activity and exercising his lawful rights as a union member and reporting potential safety security violations at the Twin Falls and Boise terminals. Reddaway counters that Mr. Evans cannot invoke Idaho's public policy exception to the at-will employment doctrine because he was not an "at-will" employee and, therefore, cannot establish a prima facie case for this claim and, further, because the claim is preempted by the National Labor Relations Act. (Dkt. 23 at 8-20.) Mr. Evans does not dispute that he is not an "at-will" employee but, instead, argues that Idaho's public policy exception can be applied to a non-at-will employee and, alternatively, suggests the Court certify the question of whether this claim applies to all Idaho workers, including contract/non-at-will employees, to the Idaho Supreme Court. (Dkt. 30 at 18-20.)

Because there is Idaho case law controlling whether the claim applies to non-at-will employees, the Court declines the invitation to certify this question to the Idaho Supreme Court.[7] Idaho has not extended the claim for wrongful termination based on public policy outside of the at-will employment context. *See Venable v. Internet Auto Rent & Sales, Inc.*, 329 P.3d 356, 360-61 (Idaho 2014) ("Idaho recognizes 'a narrow exception to the at-will employment presumption where the employer's motivation for the termination contravenes public policy.'") (quoting *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 272 P.3d 1263, 1271 (Idaho 2012)); *see also Cantwell v. City of Boise*, 191 P.3d 205, 213 n. 3 (Idaho 2008) ("Since the public policy exception applies only to at-will employees, and Cantwell and the City agreed for the sake of the summary judgment motion that Cantwell's employment was not at-will, Cantwell cannot prevail on this claim."). The Court reviewed the case cited by Plaintiff, *Walton v. Idaho Falls Consolidated Hosp., Inc.*, 720 P.2d 632, 636 (Idaho 1986), in which the Idaho Supreme Court found no error in the district court instructing the jury to consider the wrongful termination cause of action where the employee was a non-at-will contract employee. (Dkt. 30 at 19.) The cases cited by *Walton* in support of that ruling, however, both involved at-will employees. *Id.* at 367 (citing *MacNeil v. Minidoka Hosp.*, 701 P.2d 208 (Idaho 1985); *Jackson v. Minidoka Irrigation Dist.*, 563 P.2d 54 (Idaho 1977)). The prevailing case law in Idaho is against Plaintiff's position despite the

---

[7] Idaho Appellate Rule 12.3 provides that a United States District Court may certify a question of law to the Idaho Supreme Court if two conditions are met: (1) the question certified is a controlling question of law in the pending action as to which there is no controlling precedent in the decisions of the Idaho Supreme Court, and (2) the immediate determination of the Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation in the United States Court. Idaho App. R. 12.3.

fact that other states may have concluded the opposite. (Dkt. 30 at 19) (citing cases.) This claim is, therefore, unavailable to Mr. Evans as a matter of law and Reddaway's Motion for Summary Judgment is granted.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1) Defendant's Motion to Strike (Dkt. 32) is **DENIED**.

2) Defendant's Motion for Summary Judgment (Dkt. 22) is **GRANTED**. The case is dismissed with prejudice.

DATED: June 30, 2017

Edward J. Lodge
United States District Judge